UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
PECONIC BAYKEEPER, INC. and
SOUNDKEEPER, INC.,

                              Plaintiffs,

      -against-

ROSE HARVEY, *in her official capacity as*
*Commissioner of the New York State Office of*
*Parks, Recreation, and Historic Preservation*,

                             Defendant.
----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

13-CV-6261 (JMA) (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated November 8, 2013, later modified by an Amended

Complaint dated February 21, 2014, Plaintiffs Peconic Baykeeper, Inc. ("Baykeeper")

and Soundkeeper, Inc. ("Soundkeeper," and together with Baykeeper, "Plaintiffs"),

two not-for-profit environmental protection organizations, commenced this action

against Rose Harvey, in her official capacity as Commissioner of the New York State

Office of Parks, Recreation, and Historic Preservation ("Defendant" or "Harvey"),

alleging violations of: (i) the Federal Water Pollution Control Act (the "Clean Water

Act" or "CWA"), 33 U.S.C. §§ 1251 *et seq*.; (ii) the Safe Drinking Water Act (the

"SDWA"), 42 U.S.C. §§ 300f *et seq*.; and (iii) the Resource Conservation and Recovery

Act (the "RCRA"), 42 U.S.C. §§ 6901 *et seq. See* Complaint, Docket Entry ("DE") [1];

Amended Complaint ("Am. Compl."), DE [6]. On February 12, 2019, this Court issued

a Report and Recommendation as to the parties' cross-motions for summary

judgment, *see* DE [71, 73], recommending that summary judgment be granted

dismissing Plaintiffs' SDWA cause of action, and that both motions be denied in all other respects. *See* DE [81] (the "2019 R&R").

Presently before the Court, on referral from the Honorable Joan M. Azrack for report and recommendation, are the parties' cross-motions for reconsideration, in light of the Supreme Court's subsequent decision in *County of Maui v. Hawaii Wildlife Fund*, __ U.S. __, 140 S.Ct. 1462 (2020), setting forth the applicable standard for evaluating Plaintiffs' CWA claim regarding pollutants from a point source reaching navigable waters indirectly, first passing through groundwater. *See* DE [91, 92]. Upon reconsideration, the Court applies the Supreme Court's newly promulgated standard and adheres to its original conclusion. Accordingly, the Court recommends that the parties' motions be granted insofar that the new standard should be applied, and adheres to its original recommendation that summary judgment be denied as to this cause of action and in all other respects.

## I.    Background

### A.    Relevant Facts

The Court summarizes facts relevant only to the instant motion.[1]  This case arises from the underground septic systems that collect and dispose of human sanitary waste generated by guests at Suffolk County (the "County") parks Defendant operates (the "Parks"), and the extent to which that waste contributes to the nitrogen pollution impacting the County's groundwater and surrounding navigable waters. *See generally* Am. Compl.

---

[1] For additional background, *see* the 2019 R&R.

Plaintiffs are member-supported, not-for-profit organizations dedicated to protecting the integrity of Long Island's various bodies of water, and their members use those waters for recreational and scientific activities, live on or near them, eat seafood grown and caught in the harbors, rely on the County's groundwater for drinking and have economic interests related to the quality of the Long Island Sound and Great South Bay. *See* 2019 R&R at 3. Harvey is the Commissioner of the New York State Office of Parks, Recreation, and Historic Preservation, which operates several Suffolk County Parks that welcome an aggregate of over six million annual visitors. *See id.* The Parks are geographically near several surface waters,[2] including the Great South Bay, Atlantic Ocean, Fire Island Inlet, Smithtown Bay, Long Island Sound and various wetlands. *See id.* at 6.

Defendant does not have National Pollutant Discharge Elimination System ("NPDES") permits, issued by the Environmental Protection Agency ("EPA") for the Parks' septic systems, but does have New York State Pollutant Discharge Elimination System Permits, issued by the New York State Department of Environmental Conservation ("NYSDEC"), which allow sanitary waste to be discharged through septic outfalls, points where leaching fields/pools (*i.e.*, series of perforated pipes or concrete cylinders into which wastewater decants and leaches into a subterranean layer of soil) discharge waste, pursuant to New York regulations. *See id.* The Parks' septic systems are considered Class V injection wells pursuant to the

---

[2] The parties agree that, while not all surface waters are covered under the CWA, those at issue in this litigation are considered "navigable waters." *See* Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment, DE [71-2], at 16, n.9. Accordingly, the terms "surface water" and "navigable water" are used interchangeably.

SDWA, and while Defendant maintains that the EPA allows these injection wells under state law, Plaintiffs argue that the required permits are lacking. *See id.* The Parks' septic systems discharge substances typically found in human waste, such as dissolved organics, chemicals, pathogens and nutrients, including nitrogen, and the nitrogen discharged by the County's septic systems, including those the Parks maintain, represents a significant source of the nitrogen found in the County's coastal marine waters, which has resulted in adverse water quality conditions causing harm to humans, wildlife and other organisms in the aquatic and marine environment. *See id.* at 6-7. The parties dispute the extent to which the Parks contribute to the overall nitrogen concentration in these waters. *See id.* at 7.

The parties further disagree as to what extent the Parks' outfalls discharge effluent (*i.e.*, sanitary sewage) into saturated soil as opposed to directly into groundwater: Plaintiffs maintain certain outfalls are in direct contact with groundwater, while Harvey argues wastewater is released underground into unsaturated soil. *See id.* at 7-8. Plaintiffs contend that the alleged direct contact with groundwater is caused by a phenomenon referred to as "mounding," whereby the discharge of septic effluent causes a rise in groundwater such that septic discharge comes into direct contact with the groundwater rather than first passing through a layer of unsaturated soil, the veracity of which Defendant disputes. *See id.* at 8.

Long Island also sits atop a large freshwater aquifer, an underground layer of water-bearing permeable rock consisting of multiple layers, with the Upper Glacial

4

Aquifer (the "UGA"), a source of drinking water, at the top.  *See id.* at 8.  Nearly all groundwater in the UGA that is not extracted through wells ultimately discharges to surface waters.  *See id.*  Generally, groundwater flows downgradient, and there are no drinking water wells downgradient of any of the Parks' septic systems.  *See id.*

As noted in the 2019 R&R, the parties rely on several expert opinions in support of their cross-motions for summary judgment.  *See id.* at 8-11.  The experts sharply disagree on a number of issues pertaining to Plaintiffs' claims, including:  (i) the Parks' septic systems' ability to discharge effluent directly into groundwater as opposed to unsaturated soil, and whether "mounding" is occurring at the Parks; (ii) the septic systems' ability to reduce nitrogen concentration in wastewater, and the extent to which nitrogen degradation occurs in groundwater; (iii) the amount of nitrogen reaching surface waters from the Parks' septic systems; (iv) the extent of damage caused by elevated nitrogen levels; (v) the extent to which the UGA supplies drinking water; (vi) the estimated time it takes chemicals such as nitrate to reach surface waters through groundwater; and (vii) the methodology upon which Plaintiffs' experts based a majority of their findings. *See id.*

## B. **Procedural History**

### i.    *The Proceedings*

Based on the above, Plaintiffs commenced this action on November 8, 2013 against Harvey and the New York State Parks Department.  *See generally Compl.* The Complaint seeks declaratory and injunctive relief, as well as civil penalties in connection with the sewage discharge at the Parks and alleges four causes of action:

(i) Unauthorized Discharge of Pollutants in violation of the CWA; (ii) Operation of Large Capacity Cesspools in violation of the SDWA; (iii) Operation of Class V Wells Without a Permit and Endangering Underground Sources of Drinking Water in violation of the SDWA; and (iv) Imminent and Substantial Endangerment of Health and the Environment in violation of the RCRA.  Plaintiffs filed their Amended Complaint on February 21, 2014, which contains the same four causes of action, names Harvey as the sole Defendant and removes all requests for civil penalties.  *See generally* Am. Compl.

After Harvey entered into a consent order with the NYSDEC to, *inter alia*, close 23 large capacity cesspools in the Parks within three years and subsequently did so, the parties stipulated to dismiss Plaintiffs' second cause of action for Operation of Large Capacity Cesspools in violation of the SDWA as moot.  *See* DE [55], [64].  Defendant moved to dismiss the CWA and RCRA claims on June 11, 2014, *see* DE [15], which United States District Judge Leonard D. Wexler denied with leave to renew after discovery.  *See* DE [22].

## ii.   *The Cross-Motions for Summary Judgment and the 2019 R&R*

Following discovery, the parties filed cross-motions for summary judgment, *see* DE [71, 73], which Judge Azrack referred to this Court for report and recommendation.  *See* November 2, 2018 Order Referring Motions.  Plaintiffs' motion seeks summary judgment as to liability with respect to the three remaining causes of action, and Defendant's motion seeks dismissal of this litigation in its entirety.  In the 2019 R&R, this Court concluded that triable issues of fact preclude summary

judgment as to Plaintiffs' CWA and RCRA claims, while Defendant is entitled to summary judgment on the SDWA claim, and recommended accordingly. *See generally* 2019 R&R.

### a. The CWA Cause of Action

The CWA provides that the "discharge of any pollutant by any person" is unlawful without a NPDES permit allowing a party to lawfully discharge certain amounts of pollutants. 33 U.S.C. §§ 1311(a), 1342; *see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 501-02 (2d Cir. 2017). "Discharge of a pollutant" is a statutory term of art, defined in relevant part as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). A "pollutant" includes any solid waste, sewage, chemical wastes, biological materials, and industrial, municipal, and agricultural waste discharged into water. *See id.* § 1362(6)). A "point source" is "any discernible, confined and discrete conveyance," including, *inter alia*, any pipe, ditch, or container from which pollutants are or may be discharged. *Id.* § 1362(14). A "navigable water" is defined as "the waters of the United States, including the territorial seas." *Id.* § 1362(7). In addition to enabling government enforcement, the CWA authorizes citizens to bring suit in connection with violations. *Id.* § 1365(a).

In reaching its recommendation as to liability under the CWA, the Court acknowledged the split in circuit courts as to whether indirect pollution of navigable water through groundwater constitutes a violation of the CWA, noting that the question remained unsettled in the Second Circuit. The Court ultimately concluded

7

that Plaintiffs may demonstrate CWA liability if they establish that the discharge from Harvey's point sources are reaching navigable waters, consistent with the standard the Ninth Circuit applied in *Hawaii Wildlife Fund v. Cty. of Maui*, 886 F.3d 737 (9th Cir. 2018), namely that CWA liability attaches to discharges to groundwater that ultimately reach navigable waters when:  (i) pollutants are discharged from a point source; (ii) the pollutants are fairly traceable from the point source into a navigable water such that the discharge is the functional equivalent of a discharge into the navigable water; and (iii) the pollutant levels reaching navigable water are more than *de minimis*.  *See* 2019 R&R at 28.

Applying this standard, the Court concluded that disputed issues of material fact preclude resolving the issue of CWA liability on summary judgment, including the extent to which the pollutants entering the surface water at issue resemble those in the effluent the Parks discharged, whether the Parks' septic discharge has a more than *de minimis* effect on the nearby navigable waters, and the propriety of Plaintiffs' experts' methodology and conclusions, and recommended denying summary judgment as to Plaintiffs' CWA claim for both parties.  *See id.* at 29.

### b.  The SDWA Cause of Action

Under the SDWA, the EPA is charged with promulgating "regulations restricting the concentration of [contaminants] in drinking water."  *Environmental Def. Fund, Inc. v. Costle*, 578 F.2d 337, 339 (D.C. Cir. 1978).  One area of regulation concerns the underground injection control ("UIC") program.  *See* 42 U.S.C. § 300h; *see also* 40 C.F.R. § 144 (defining the regulatory framework of EPA administered

permit programs); *id.* § 146 (setting forth technical criteria and standards for the UIC program). Under the UIC program, large septic tanks that have the capacity to serve more than 20 people per day are considered "Class V" injection wells and are subject to various regulations. *See id.* §§ 144.1(g)(1)(iv), (2)(iii), 144.81(9). Specifically, the UIC program is designed to prevent underground injections that endanger water sources by introducing contaminants that might cause water systems to be noncompliant with primary drinking water regulations. *See* 42 U.S.C. §§ 300h(b)(1), (d)(2). It is prohibited to conduct "injection activity in a manner that allows the movement of fluid containing any contaminant into underground sources of drinking water, if the presence of that contaminant may cause a violation of any primary drinking water regulation." 40 C.F.R. § 144.12(a). An underground source of drinking water includes a nonexempt aquifer or portion thereof that "supplies any public water system" or "contains a sufficient quantity of ground water to supply a public water system; and (i) [c]urrently supplies drinking water for human consumption; or (ii) [c]ontains fewer than 10,000 mg/L total dissolved solids." *Id.* § 144.3. If Class V wells might cause violations of drinking water regulations, the EPA, among other things, shall "require the injector to obtain an individual permit." *See* id. § 144.12(c)(1).

In recommending that Defendant be granted summary judgment on Plaintiffs' SDWA claim, the Court noted the parties' agreement that the Parks' septic tanks inject contaminants into the UGA, which is an underground *source* of drinking water, and that the septic systems are classified as Class V injection wells that discharge

substances such as nitrogen, which constitute "contaminants" under the SDWA. *See* 2019 R&R at 31. The parties' dispute therefore hinges upon the legal distinction between discharged contaminants that actually or potentially impact a public water *system*. The Court concluded that, because contaminants are carried with groundwater and groundwater generally flows in a downgradient direction, and no drinking water wells are downgradient of any of the Parks' septic systems, there is no evidence that any drinking water is or will be contaminated by the Parks' septic discharge, and so there is no unlawful impact on any water system. *See id.* at 32-33. As a result, summary judgment in Defendant's favor on this cause of action is appropriate, and the Court recommended that this claim be dismissed.

### c. The RCRA Cause of Action

Finally, the RCRA authorizes citizens to bring suit "against any person, including . . . any . . . governmental instrumentality or agency . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Under the RCRA, "solid waste" is "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations. . . ." *Id.* § 6903(27). "Hazardous waste" includes "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or

infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." *Id.* § 6903(5).

The Court recommended that disputed issues of material fact preclude summary judgment for either party on Plaintiffs' RCRA claim, which alleges that Harvey is violating the statute through the contribution of nitrogen and other pollutants into bodies of water because the waste from the Parks' septic systems presents an imminent and substantial endangerment to health or the environment, and pointed to the sharp disagreement between the parties' experts on this issue. *See* 2019 R&R at 34. Specifically, the parties' experts disagree as to methodology and ultimate conclusions as to how substantially the Parks' septic discharge contributes to the elevated nitrogen levels in the County's surface waters, and the Court declined to weigh the experts' credibility at the summary judgment stage. *See id.* at 35-36. Accordingly, the Court recommended that summary judgment be denied on this cause of action.

> d. *The Supreme Court's Subsequent Decision in County of Maui v. Hawaii Wildlife Fund*

Ten days after the 2019 R&R was issued, Harvey filed a motion to stay all proceedings and for an extension of time to file objections in light of the Supreme Court's grant of certiorari in *County of Maui v. Hawaii Wildlife Fund*, No. 18-260, 2019 WL 659786 (Feb. 19, 2019) ("*Maui*"). *See* DE [82]. Judge Azrack granted Defendant's motion, as the Supreme Court's decision in *Maui* would determine the legal standard for the CWA claim in this action, noting that while the decision would

not affect the legal standards for the SDWA or RCRA causes of action, they are based on the same set of facts, and principles of judicial economy favored a stay of the litigation in its entirety pending the Supreme Court's resolution of the CWA standard. *See* February 26, 2019 Order. On May 18, 2020, after the Supreme Court's decision in *Maui*, Judge Azrack directed the parties to brief motions for reconsideration to this Court regarding Plaintiffs' CWA claim prior to filing any objections to the 2019 R&R. *See* May 18, 2020 Order.

The parties filed their cross-motions for reconsideration on December 8, 2020, both of which are opposed. *See* DE [91, 92]. Each motion argues that the Supreme Court's decision in *Maui* necessitates a grant of summary judgment for its side. Plaintiffs further argue that they are entitled to summary judgment on their SDWA claim, which Defendant opposes, and Harvey argues she is entitled to summary judgment on the RCRA claim, which Plaintiffs oppose. As discussed below, the Court recommends granting both motions in part and reconsiders CWA liability in light of the new standard set forth in *County of Maui v. Hawaii Wildlife Fund*, and, upon reconsideration, adheres to the 2019 R&R in all respects.

## II.  Legal Standard

The decision to grant or deny a motion for reconsideration is "committed to the sound discretion of the district court." *Wilder v. News Corp.*, No. 11-cv-4947, 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks and citation omitted). Courts in the Second Circuit will grant motions for reconsideration only where: (1) there has been a change in the law; (2) new evidence is available; or (3)

there is a "need to correct a clear error or prevent manifest injustice." *Frey v. Bekins Van Lines, Inc.*, No. 09-cv-5430, 2012 WL 2701642, at *1 (E.D.N.Y. July 5, 2012) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Reconsideration is generally denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.*" Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Belfiore v. Procter & Gamble Co.*, 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). Accordingly, courts will not grant motions for reconsideration where litigants are simply attempting to "reargue their previous positions or present new or alternative theories that they [previously] failed to set forth[.]" *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013); *see also Wall v. Constr. & Gen. Laborers' Union*, No. 06-cv-1264, 2009 WL 230122, at *1 (2d Cir. Feb. 2, 2009) (Summary Order) (affirming denial of motion for reconsideration because "motion simply reiterated earlier arguments and did not point to any new law or fact that created an exceptional circumstance mandating reconsideration").

III.    **Discussion**

   A.  **Plaintiffs' CWA Claim**

The parties make their motions for reconsideration as to Plaintiffs' CWA cause of action based on the Supreme Court's decision in *Maui*, which determined the standard for that claim after the 2019 R&R was issued.  The Court recommends granting the parties' cross-motions in part as a result of this change in the law and, upon reconsideration, adhering to its original recommendation that summary judgment be denied due to material issues of fact as to Defendant's CWA liability.

   i.    *The Supreme Court's Decision in Maui*

In *Maui*, environmental organizations brought an action against the County of Maui, alleging that it violated the CWA by discharging effluent without a permit at four injection wells.  The county's wastewater reclamation facility collects sewage from the surrounding area, partially treats it and pumps around four million gallons of treated water into the ground through those wells, which travels about a half mile, through groundwater, to the Pacific Ocean.  The issue before the Supreme Court was whether an EPA permit was required where a pollutant from a point source was conveyed to navigable waters by a nonpoint source, namely the groundwater.

In addressing this question, the Supreme Court recognized a new standard for liability – the CWA requires a permit when there is a direct discharge of pollutants from a point source into navigable waters, or when there is the "functional equivalent" of a direct discharge.  *See County. of Maui, Hawaii v. Hawaii Wildlife Fund*, __ U.S. __, __ 140 S. Ct. 1462, 1468 (2020).  In reaching this conclusion, the

14

Court rejected the Ninth Circuit's "fairly traceable" standard, which this Court applied in the 2019 R&R, as overbroad. *See County of Maui*, __ U.S. at __, 140 S.Ct. at 1469-70. While noting that this standard may prove difficult to apply, the Supreme Court identified several factors "that may prove relevant" for determining whether indirect discharges are functionally equivalent to direct discharges:

> (i) transit time; (ii) distance traveled; (iii) the nature of the material through which the pollutant travels; (iv) the extent to which the pollutant is diluted or chemically changed as it travels; (v) the amount of pollutant entering the navigable waters relative to the amount of the pollutant that leaves the point source; (vi) the manner by or area in which the pollutant enters the navigable waters; (vii) the degree to which the pollution (at that point) has maintained its specific identity.

*See id*. at __, 140 S.Ct. at 1476-77. Time and distance are the "most important factors in most cases, but not necessarily every case." *Id*.

> ii.  *Whether the Parks' Discharges are Functionally Equivalent to Direct Discharges*

Given this new standard, the Court recommends granting the parties' motions for reconsideration on the CWA claim, and upon reconsideration, adhering to its original recommendation. Specifically, even when applying the "functionally equivalent" standard rather than the Ninth's Circuit's more expansive "fairly traceable" standard, summary judgment remains inappropriate.

Plaintiffs argue that undisputed evidence demonstrates that there is reasonably fast transmission of 40-75 percent of pollution over a short distance from Defendant's septic systems to downgradient surface waters, that the pollutants are not "substantially impeded" on their way from the Parks to the navigable waters and arrive in substantially the same form as when they were discharged, and that

15

pollution entering surface waters downgradient of the Parks' septic systems is readily identifiable as being "from" the septic systems. *See* Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration of Report and Recommendation ("Pl. Mem."), DE [91-1], at 5, 11-13. Plaintiffs further maintain that any disputed facts as to how many pounds of Defendant's pollution reach surface waters and the significance of such contribution to the adverse effects on Long Island's coastal waters are not relevant to liability under *Maui* because the Supreme Court does not explicitly recognize a "*de minimis*" exception to liability, and so this issue is material only to "the question of remedies." *See id.* at 2 n.1, 5.

Harvey counters that under *Maui*, summary judgment in her favor is appropriate because the Parks' septic systems filter, treat, transform and dilute the effluent as it travels with groundwater before emerging into surface water, such that a discharge from the Parks' septic systems is not the "functional equivalent" of a direct discharge into surface water. *See* Memorandum of Law in Support of Defendant's Cross-Motion for Reconsideration and in Opposition to Plaintiffs' Motion for Reconsideration ("Def. Mem."), DE [92-1], at 10-11.

The Court disagrees with both sides. Summary judgment remains inappropriate. Though Defendant's point sources discharge a short distance from navigable waters in most instances and often take only weeks to reach those waters, and while transit time and distance traveled are often the most important factors under *Maui*, facts concerning the remaining factors, namely the extent to which the pollutant is diluted or chemically changed as it travels, the amount of pollutant

16

entering the navigable waters relative to the amount of the pollutant that leaves the Parks' septic systems, and the degree to which the pollution has maintained its specific identity, remain sharply in dispute to such an extent that they outweigh the time and distance factors such that summary judgment should be denied.

To support their position as to the *Maui* factors that the pollutants are not substantially impeded by subsurface geology on their way to Long Island's navigable waters, which goes to the nature of the material through which the pollutant travels, and that they arrive at those waters in substantially the same form, having maintained their specific identities as when they were discharged, Plaintiffs rely heavily on their expert's opinion. *See* Pl. Mem. at 11-12. Harvey strongly disputes the methodologies Plaintiffs' expert used, however, and cites to her own expert's opinion that compounds containing nitrogen undergo meaningful chemical transformations as they travel through unsaturated soil and groundwater to surface water, and so the pollutants lose their specific identities through dilution or chemical changes as they are conveyed to Long Island's surface waters. *See* Def. Mem. at 10-15.

The parties further disagree as to the proportion of discharged pollution actually reaching surface waters. Plaintiffs maintain that 40-75 percent of Defendant's pollution makes its way to Long Island's navigable waters, while Harvey argues that the mass of any pollutant discharged is irrelevant under *Maui*, which inquires not into the total amount of the discharge, but into its similarity to a direct discharge from the same point source, adding that the same dilution process that

changes the pollutants' form and alters the concentration of contaminants (a fact that is in dispute) leaves their total masses unchanged and therefore renders mass immaterial. *See* Def. Mem. at 15-16. Further in dispute on this point are the parties' experts' conclusions. Plaintiffs' expert concluded that the manner and area of the pollutants' entry into navigable waters "largely resembles a direct discharge in that Defendant's plumes of nitrogen travel downgradient and emerge in a zone of adjacent water," *see* Pl. Mem. at 13, while Harvey's experts strongly dispute this conclusion and the methodology used to reach it. *See* Def. Mem. at 12-14.

Accordingly, the Court amends its 2019 R&R to apply the *Maui* standard to Plaintiffs' CWA cause of action, and, upon applying the standard, recommends adhering to its original recommendation that the cross-motions for summary judgment as to this claim be denied.

### B. **Plaintiffs' SDWA and RCRA Claims**

Despite Judge Azrack's Order directing the parties to file motions for reconsideration as to Plaintiffs' CWA claim, the parties additionally request that this Court reconsider its 2019 R&R as to Plaintiffs' SDWA and RCRA causes of action. Specifically, Plaintiffs argue they are entitled to summary judgment as to liability under the SDWA, and Defendant maintains she is entitled to summary judgment on Plaintiffs' RCRA claim. As discussed below, the parties fail to show there has been a change in the law, that new evidence is available, or that there is a need to correct a clear error or prevent manifest injustice as to either of these causes of action, and the

Court respectfully recommends denial of both Plaintiffs' and Defendant's motions for reconsideration as to these claims.

> ### i.      Reconsideration as to the SDWA Cause of Action

The SDWA provides that an injection of fluids endangers drinking water sources:

> if such injection may result in the presence in underground water which supplies or can reasonably be expected to supply any public water system of any contaminant, and if the presence of such contaminant may result in such system's not complying with any national primary drinking water regulation or may otherwise adversely affect the health of persons.

42 U.S.C. § 300h(d)(2).

Plaintiffs argue that the 2019 R&R focused only on whether the presence of a contaminant may result in the water system's non-compliance with any national primary drinking water regulations, and "overlooked" any "other[]" adverse effects on health.  *See* Pl. Mem. at 17.  This position does not amount to an argument that there was a change in the law, that new evidence exists, or that there is a need to correct a clear error or prevent manifest injustice, and a motion for reconsideration is inappropriate on these grounds alone.

Notwithstanding the above, Plaintiffs' argument is unavailing.  The Court did not overlook the possibility of any adverse effects on health aside from compliance with national primary drinking water regulations because it concluded that the UGA is a drinking water *source*, but not a water *system*, as there are no public water systems downgradient from any septic tank in the Parks that could have been adversely impacted.  In fact, as Defendant notes, the Parks' septic systems' close

proximity to the shoreline renders the area downgradient from the septic tanks unsuitable for the placement of public water systems or drinking water extraction wells in the future. *See* Def. Mem. at 23-24. Because the UGA is not a drinking water system, the Court need not address whether any contaminants "otherwise adversely affect the health of persons." 42 U.S.C. § 300h(d)(2). Accordingly, the Court recommends denying Plaintiffs' motion for reconsideration as to their SDWA cause of action.

ii.     *Reconsideration as to the RCRA Cause of Action*

Defendant argues that this Court should reconsider its 2019 R&R as to Plaintiffs' RCRA claim because that recommendation is inconsistent with the Second Circuit's decision in *Cordiano v. Metacon Gun Club, Inc.*, 575 F. 3d 199, 211-212 (2d Cir. 2009), which holds that expert opinions that do not establish the likelihood that contamination will result in harm to human health or the environment and the severity of any harm that might occur are insufficient to avoid summary judgment. *See* Def. Mem. at 18-19. Harvey explains that because Plaintiffs' experts have opined "only that there is a potential for an imminent and substantial endangerment to human life or the environment," but not as to the likelihood or severity of any particular, concrete or harmful effect that can be attributed to discharge from the Parks' septic systems, Plaintiffs have not put forth "the type of evidence necessary to avoid summary judgment." *Id.* at 19.

As with Plaintiffs' motion for reconsideration on their SDWA claim, Harvey's argument fails to meet the applicable standards. Moreover, the parties cited to

*Cordiano* in their initial summary judgment papers, which this Court relied on in reaching its 2019 R&R. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment, DE [73-2], at 18, 34, 38; Memorandum of Law in Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, DE [74], at 27-29. The factual disputes highlighted in the 2019 R&R remain, and Harvey points to no changes in the law or evidence, nor a need to correct a clear error or manifest injustice, that would render reconsideration appropriate. Accordingly, the Court recommends denying Defendant's motion for reconsideration as to Plaintiffs' RCRA cause of action.

## IV. Conclusion

For the reasons set forth above, the Court recommends granting in part the parties' cross-motions for reconsideration as to Plaintiffs' CWA cause of action to apply the *Maui* standard, and, upon reconsideration, adhering to its original recommendations in all respects.

## V. Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v.*

*Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED**

Dated:     Central Islip, New York
             May 21, 2021          /s/ Steven I. Locke
                                     STEVEN I. LOCKE
                                     United States Magistrate Judge